IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Yvonne Drakeford, | ) | Case No. 8:16-cv-03488-TMC-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Nancy A. Berryhill,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B).[2] Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[3] For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1]On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security.

[2]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[3]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title." 42 U.S.C. § 1383(c)(3).

## PROCEDURAL HISTORY

On July 18, 2012, Plaintiff filed applications for DIB and SSI, alleging an onset of disability date of June 2, 2012. [R. 174–186; *see* R. 12.] The claims were denied initially [R. 94–95, 120–124] and on reconsideration [R. 129–132] by the Social Security Administration ("the Administration"). Plaintiff filed a request for hearing before an Administrative Law Judge ("ALJ"), and on May 7, 2015, ALJ Todd D. Jacobson conducted a de novo hearing on Plaintiff's claims. [R. 31–55.]

The ALJ issued a decision on June 22, 2015, finding Plaintiff not disabled under the Social Security Act ("the Act"). [R. 12–24.] At Step 1,[4] the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2014, and had not engaged in substantial gainful activity since June 2, 2012, the alleged onset date. [R. 14, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe impairments: obesity, seizure disorder, status post cerebrovascular accident with residuals, mild lumbar degenerative disc disease, fibromyalgia, mood disorder, and anxiety disorder. [R. 14, Finding 3.] The ALJ also found Plaintiff had non-severe impairments of high blood pressure, sleep apnea, and gastrointestinal problems. [R. 15.] At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 15, Finding 4.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

---

[4]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work (lifting and carrying 20 pounds occasionally and 10 pounds frequently, as defined in 20 CFR 404.1567(b) and 416.967(b)), except that she should have a sit/stand option allowing her to change positions on a one hour interval. She should never climb, and she can only frequently balance, stoop, crouch, kneel, and crawl. She should not have concentrated exposure to hazards such as moving machinery and unprotected heights. She is limited to unskilled work with occasional public contact. She is limited to a stable work environment that does not have frequent changes.

[R. 17, Finding 5.] Based on this RFC finding, the ALJ determined at Step 4 that Plaintiff was unable to perform any of her past relevant work as a babysitter, order filler, sales clerk, sewer, stocker, and stone polisher. [R. 22–23, Finding 6]. However, upon considering Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert ("VE"), the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. [R. 23, Finding 10.] Thus, the ALJ found that Plaintiff had not been under a disability as defined in the Act from June 2, 2012, through the date of the decision. [R. 24, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision but the Appeals Council declined review. [R. 1–5.] Plaintiff filed the instant action for judicial review on October 26, 2016. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends this case should be reversed and remanded. [Doc. 9.] Specifically, Plaintiff contends the ALJ:

1. failed to properly follow the treating physician rule [*id*. at 4–8];

2. failed to properly consider Plaintiff's fibromyalgia under Social Security Ruling ("SSR") 12-2p [*id*. at 8–9]; and

3. failed to properly assess Plaintiff's credibility [*id*. at 9–10].

The Commissioner contends the decision is supported by substantial evidence and should be affirmed. [Doc. 10.] Specifically the Commissioner argues that the ALJ:

1. properly weighed the medical opinions in evidence [*id*. at 5–8];

2. properly determined that Plaintiff's impairments, individually and in combination, did not meet or equal a listing [*id*. at 9–10]; and

3. properly assessed Plaintiff's credibility [*id*. at 10–11].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and

when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1091–92 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brenem v. Harris*, 621 F.2d 688, 690–91 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court

enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*,

941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the

basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the

determination of disability at the time the application was first filed; (2) the evidence is

material to the extent that the Commissioner's decision might reasonably have been

different had the new evidence been before him; (3) there is good cause for the claimant's

failure to submit the evidence when the claim was before the Commissioner; and (4) the

claimant made at least a general showing of the nature of the new evidence to the

reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. §

405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d

26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by*

*amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of*

*Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991), *rev'd on other grounds*.[5] With

---

[5]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the

remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> [the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months[.]

*Id.* § 423(d)(1)(A).

## I. The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the

---

Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. §§ 404.1520, 416.920.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–1575, 416.974–975.

## B. *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521, 416.921. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

## C. *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509, 416.909, the ALJ will find the claimant

disabled without considering the claimant's age, education, and work experience.[6]  20

C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

### D.   *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the

statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65

F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the

claimant's RFC[7] with the physical and mental demands of the kind of work he has done in

the past to determine whether the claimant has the RFC to do his past work.  20 C.F.R.

§§ 404.1560(b), 416.960(b).

### E.   *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior

work, the burden of proof shifts to the Commissioner to establish that the claimant could

perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g),

416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden,

the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines

(the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers

primarily from an exertional impairment, without significant nonexertional factors.[8]  20

---

[6]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[7]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[8]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a).  A nonexertional limitation

C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

---

is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

## II.   Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.   Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to

support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Craig*, 76 F.3d at 590 (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)) (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. §§ 404.1527(d), 416.927(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.	Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. §§ 404.1517, 416.917.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.	Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as

a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. §§ 404.1529, 416.929. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms. . . .
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or mental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or

> severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 at 34,483 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI. Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique

advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

As stated, Plaintiff contends that the ALJ failed to properly consider whether her new severe impairment of fibromyalgia, either singly or in combination with her other severe impairments, medically equaled a listing as required under SSR 12-2p.[9] [Doc. 9 at 2, 8–9.] Plaintiff also argues that the ALJ failed to explain his consideration of Plaintiff's testimony, and likewise failed to honor the treating physician rule in his consideration of the longitudinal medical records of Dr. Ifediora F. Afulukwe ("Dr. Afulukwe"). [*Id*. at 4–7, 9–10.] The Court agrees with Plaintiff that remand is necessary.

**Consideration of Fibromyalgia under SSR 12-2p**

"Although there is no medical listing for fibromyalgia, Titles II and XVI of Social Security Ruling 12-2p provide[ ] guidance on how the Commissioner develops evidence to establish that a person has a medically determinable impairment of fibromyalgia, and how to evaluate fibromyalgia in disability claims and continuing disability reviews." *Smith v. Colvin*, No. 2:14-cv-00042, 2015 WL 7571946, at *7 (W.D. Va. Nov. 24, 2015) (citing

---

[9]Prior to the applications for DIB and SSI at issue in the instant matter, Plaintiff filed applications for DIB and SSI in January 2012, which were denied on June 1, 2012. [R. 59–71.] In the prior decision, Plaintiff was found to suffer from severe impairments of partial seizure disorder, status post CVA with residuals, obesity, mood disorder, and anxiety. [R. 61.] Although Plaintiff's medical records were noted to "infer a diagnosis of fibromyalgia," they failed to establish the presence of 11 of 18 classified tender points sites bilaterally. [R. 66.] Subsequent to the prior decision, Dr. Nandurkar described clinical findings that met the criteria for fibromyalgia. [R. 15.]

SSR 12-2p, 77 Fed. Reg. 43,640 (July 25, 2012)). SSR 12-2p defines fibromyalgia as a "complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p, 77 Fed. Reg. at 43,641.

SSR 12-2p explains how fibromyalgia should be evaluated in disability claims, and provides that fibromyalgia should be considered in the RFC based on a longitudinal record whenever possible because symptoms can wax and wane such that a person may have "bad days and good days." *Id*. at 43,642, 43,644. Courts have recognized that fibromyalgia symptoms are entirely subjective, there is no laboratory test to confirm the presence or severity of it, and that "physical examinations will usually yield normal results" such as "a full range of motion, no joint swelling," normal muscle strength and neurological reactions. *Smith v. Colvin*, No. 1:14-cv-04400-RBH, 2016 WL 1089302, at *7 (D.S.C. March 21, 2016) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 108–09 (2d Cir. 2003)). The nature of fibromyalgia is such that an individual's ability to perform "certain tasks or postural maneuvers on a given day does not necessarily reflect an ability to perform those tasks on a sustained basis." *Id.* (quoting *Winkler v. Comm'r, Soc. Sec. Admin.*, No. SAG-14-2720, 2015 WL 4069334, at *4 (D. Md. July 2, 2015)).

In the instant case, the ALJ found at Step 2 that Plaintiff's fibromyalgia constituted a severe impairment. At Step 3, however, the ALJ concluded that Plaintiff's "physical impairments do not manifest the signs, symptoms, and findings required to meet or equal any of the Listings. . . ." [R. 16.] At Step 2 of his decision, the ALJ stated that he reviewed Plaintiff's fibromyalgia in accordance with SSR 12-2p; noted that her examinations showed "at least 11 positive tender points on both sides of her body," both above and below the

waist; and that she met the 2010 American College of Rheumatology criteria for repeated manifestations of six or more fibromyalgia symptoms, including fatigue, cognitive or memory problems,[10] waking unrefreshed, depression, anxiety, and abdominal pain.  [R. 15.]  The ALJ also noted that Plaintiff testified that her "whole body aches and is weak from fibromyalgia and she has muscles spasms, balance problems, swelling in her feet and ankles, and trigger points in her head, neck, chest, hips, and knees."  [R. 18.]  The ALJ noted that "the medical evidence obtained for the current claim does not show a significant change in [Plaintiff's] medical condition [since the prior decision][11] other than her new assessment of fibromyalgia, which the undersigned has addressed with a new limitation in the residual functional capacity."  [R. 18.]  The ALJ's additional limitation was a "sit/stand option on a one-hour interval."  [R. 21.]

In evaluating the RFC determination, the Court must be able to deduce whether the ALJ considered Plaintiff's subjective complaints of fibromyalgia pain in determining Plaintiff's RFC.  *See Smith*, 2016 WL 1089302 at *7–8 (reversing the ALJ where he failed to account for the subjective nature of fibromyalgia in his RFC analysis); *Dowell v. Colvin*, No. 1:12CV1006, 2015 WL 1524767, at *3 (M.D.N.C. Apr. 2, 2015)[12] (reversing the ALJ because the ALJ failed to provide reasons, supported by the evidence in the record, for the

---

[10] The Court notes the ALJ found Plaintiff had moderate difficulties in concentration, persistence, and pace.  [R. 16.]

[11] *See supra* n. 9.

[12] *See Eller v. Colvin*, No. 1:14-cv-00493-LCB-JLW, 2015 WL 4489479, at *5–6 (M.D.N.C. July 22, 2015) (applying the analysis and reasoning from *Dowell*, noting that the remand "may actually be stronger in this case because SSR 12-2p was available to the ALJ in this case," even though it was not available in *Dowell*).

weight he gave to claimant's subjective pain complaints). In the instant matter, it is unclear that the ALJ considered Plaintiff's testimony regarding the pain associated with her fibromyalgia and/or her stated limitations in his decision.[13] Indeed, the ALJ provides no explanation in his decision as to how the addition of a sit/stand option adequately addresses Plaintiff's fibromyalgia, in light of her pain complaints and the combination of her numerous other severe impairments. The record includes an abundance of testimony from Plaintiff regarding the disabling effect of the pain she suffers. [*See* R. 39–40 (testimony by Plaintiff that her pain makes her disabled and that she experiences pain in her head, neck, shoulders, back, and hip with associated numbing and tingling in her feet and hands); R. 40 (testimony by Plaintiff that she has 3 to 4 headaches a week, lasting all day at times, and that her weight puts pressure on her back and knees); R. 40–41 (testimony by Plaintiff that the pain in her neck is a stabbing, burning pain; the pain in her shoulders is a throbbing pain that she feels every day; and the pain in her hands goes from numbness and tingling to burning on fire); R. 41–42 (testimony by Plaintiff that the pain in her back can be tingling, burning, or stabbing like she's getting beat with a hammer most days); R. 43 (testimony by Plaintiff that her fibromyalgia makes her feel weak and that her whole body aches like having the flu; she has symptoms 3 to 4 days a week if not every day; she has trouble with balance and cannot stand for long without losing balance or her hip going out); R. 44 (testimony by Plaintiff that she has two trigger points in the back of

_____

[13]This includes the ALJ's hypothetical to the VE. In the hypothetical, the ALJ failed to mention any limitations directed to Plaintiff's pain complaints, medication side effects, balance issues, or alleged problems with concentration, which the ALJ noted were moderate. [R. 52–54.] To the extent the ALJ's hypothetical included the limitation of being off task 20% of the time to address Plaintiff's pain complaints, the VE testified that competitive employment would be eliminated. [R. 53.]

her head, two on her neck, three in her chest, and some in her left hip, right hip, and inner knees)]. Plaintiff also testified that the pain in her trigger points feel like stabbing pain and that she feels exhausted and tired all day. [R. 48 (testimony from Plaintiff that she takes medication and received injections for her fibromyalgia pain, and that the medications make her drowsy, dizzy and cause her to have racing thoughts).]

The ALJ's decision, however, fails to account for this testimony,[14] leaving the Court unable to deduce the weight given to Plaintiff's subjective complaints of fibromyalgia pain. *See Sarcinella v. Berryhill*, No. 8:16-cv-1216-MGL-JDA, 2017 WL 1710948, at *15 (D.S.C. April 21, 2017) (citing *Smith*, 2016 WL 1089302 at *7) (identifying as reversible error the ALJ's failure to account for the subjective nature of fibromyalgia pain and fatigue in plaintiff's RFC as required by SSR 12-2p), *report and recommendation adopted by* 2017 WL 1542059 (D.S.C. April 28, 2017). Although the Court is mindful that the ALJ retains the authority to make the RFC determination, it is legally insufficient for the ALJ to merely recite some facts—and ignore others—and make conclusory statements in support of the RFC determination. *Dowell*, 2015 WL 1524767, at *4. "A necessary predicate to engaging in substantial evidence review is a record" that adequately explains the ALJ's findings and reasoning. *See id.* at *4 (requiring that the ALJ "build a logical bridge between the evidence and his conclusions") (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). Given the particular decision in this case, the Court cannot ascertain whether the ALJ properly accounted for Plaintiff's fibromyalgia symptoms singly, in combination, or at

---

[14]The Court is aware that the ALJ's decision summarizes Plaintiff's testimony; however, the decision fails to explain how that testimony factored in to the sit/stand limitation or whether that limitation adequately addresses Plaintiff's fibromyalgia.

all in making the RFC determination, which is required by SSR 12-2p. Accordingly, in light of the above, the Court cannot find the ALJ's decision is supported by substantial evidence and recommends that the case be remanded for further administrative review of Plaintiff's claim.[15]

**Additional Allegations of Error**

Because the Court finds the ALJ's failure to properly consider Plaintiff's fibromyalgia in accordance with SSR 12-2p is sufficient basis for remand, the Court declines to address Plaintiff's remaining allegations of error. On remand, however, the ALJ is to take into consideration Plaintiff's contention that the ALJ failed to adequately explain his consideration of Plaintiff's testimony as well as the weight assigned to the opinion of Plaintiff's treating physician. Additionally, the ALJ is reminded of the Court's holding in, *Mascio v. Colvin,* 780 F.3d 632 (4th Cir.2015), in evaluating Plaintiff's RFC.

<u>**CONCLUSION AND RECOMMENDATION**</u>

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be REVERSED pursuant to sentence four of 42 U.S.C. § 405(g),

---

[15]Also on remand, the ALJ will have to reevaluate Plaintiff's credibility by considering Plaintiff's subjective complaints of pain as it relates to her fibromyalgia. *See Smith*, 2016 WL 1089302, at *9 n.10 (citing *Craig,* 76 F.3d at 595) (reminding the ALJ that the credibility evaluation of claimant must account for not only the available evidence, but also claimant's statements about her pain; the evidence to consider includes laboratory findings, objective medical evidence of pain, medical signs, claimant's medical history, and any other evidence relevant to the severity of claimant's impairment, such as her daily activities, specific descriptions of the pain, and medical treatment taken to alleviate the pain.) Further, on remand, the ALJ is reminded that he cannot disregard or discredit a claimant's statements of pain solely because they are not substantiated by objective medical evidence. *See id*.

and the case be REMANDED to the Commissioner for further administrative action consistent with this Report and Recommendation.

**IT IS SO RECOMMENDED**.

s/Jacquelyn D. Austin
United States Magistrate Judge

January 8, 2018
Greenville, South Carolina